IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DWIGHT L. SHIVERS, JR., | : |
| Plaintiff, | : |
| v. | : Civil Action No. 17-964-RGA |
| CONNECTIONS, et al., | : |
| Defendants. | : |

Dwight L. Shivers, Jr., James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Roopa Sabesan, Esquire, White & Williams, Wilmington, Delaware. Counsel for Defendant Connections Community Support Program Inc.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants C/O Diaz, C/O Charles, Sgt. Bowden, and C/O McCarthy.

**MEMORANDUM OPINION**

July 10, 2020
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Dwight L. Shivers, Jr. was a pretrial detainee housed at Sussex Correctional Institution in Georgetown, Delaware, when he filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). He is now a sentenced inmate housed at James T. Vaughn Correctional Center in Smyrna, Delaware. The Amended Complaint, filed December 1, 2017, is the operative pleading. (D.I. 14). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). Before the Court are Defendants' motions for summary judgment. (D.I. 91, 94). Briefing is complete.

**I.     BACKGROUND**

**A.     The Skin Condition**

On June 1, 2017, Plaintiff arrived at the James T. Vaughn Correctional Center and, at intake, was evaluated by medical staff who noted no sores or rashes on his skin. (D.I. 95 at 45). From there, he was transferred to Sussex Correctional Institution. (*Id.* at 416). On June 7, 2017, Plaintiff submitted a sick call slip and complained of chronic itchy skin he described as "some type of allergic reaction to something." (*Id.* at 141). Three days later, Plaintiff was seen by a registered nurse for complaints of skin irritation. (D.I. 100 at 1). Plaintiff provided a history of skin irritation and explained it was something that "usually happens when [he] comes to jail." (*Id.*). Plaintiff was examined and given hydrocortisone cream for the rash and advised to follow up with medical staff during his scheduled initial physical if the rash had not resolved by then.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

1

(*Id.*). Plaintiff had no complaints about the skin rash or the treatment provided when he presented for his initial physical on June 13, 2017. (*Id.*).

On June 17, 2017, Plaintiff submitted a sick call stating he has eczema and that the hydrocortisone cream provided him was not strong enough. (D.I. 95 at 143). Three days later, Plaintiff was seen by medical staff and reported no improvement. (D.I. 100 at 2). Plaintiff was assessed by a nurse for itching in his arms, legs and other parts of the body, and she referred Plaintiff for a follow-up. (*Id.*). On June 26, 2017, Plaintiff submitted a medical grievance, referred to his previously-submitted sick call slips, and complained that he had not been seen by a doctor and he was in constant agony from the itching. (D.I. 98 at 6).

On June 28, 2017, Plaintiff was seen by a nurse practitioner; he relayed that there was "black mold" on his mattress and it was causing skin itchiness. (D.I. 106 at 8). Plaintiff also stated that the hydrocortisone cream was not effective. (*Id.*). The nurse practitioner assessed Plaintiff as having non-specific skin eruption, prescribed prednisone, and advised Plaintiff to follow up if there was no improvement. (*Id.*). Plaintiff started taking prednisone the next day. (D.I. 95 at 310-11).

Plaintiff was next seen by a nurse practitioner on July 5, 2017. (D.I. 106 at 8). Plaintiff related that, despite medication, he continued with itching; examination revealed that he continued have small diffuse papules on his legs. (*Id.*). Treatment of the condition continued with cream and medication. (*Id.*). Plaintiff's condition was monitored, and he was seen on July 15, 2017, and July 28, 2017. (D.I. 100 at 4; 106 at 8). At the July 28, 2017 visit, after reviewing Plaintiff's rash and itch history, as well as the medications that had not been effective for the condition, the nurse practitioner

2

assessed Plaintiff with possible scabies and admitted him to the infirmary for observation and care. (D.I. 100 at 4). At the same time, medical staff ordered a terminal cleaning of his mattress. (*Id.*). While in the infirmary, Plaintiff was treated with topical creams to treat scabies and he was monitored. (*Id.* at 3). Plaintiff felt much better after treatment, denied itch, and was discharged. (D.I. 95 at 38). In early October 2017 Plaintiff transferred from SCI to JTVCC. (*Id.* at 36).

Plaintiff testified that he asked medical staff to test him for scabies, and it was determined that he was suffering from scabies. (D.I. 92-2 at 23-24). Plaintiff acknowledged that scabies are caused by a parasite, and to date, he has no proof of black mold. (D.I. 92-2 at 24).

**B.     The Mattress**

On June 25, 2017, Plaintiff submitted a grievance and complained that he had discovered "black mold" on his mattress. (D.I. 92-1 at 2). Michael Maans, who investigated the grievance, denies Plaintiff's allegations that the mattress was contaminated with mold.[2] (D.I. 92-3 at 3). Plaintiff testified that it was not positively determined as mold because "they refused to test it." (D.I. 92-2 at 23). Plaintiff testified that he first noticed the mold when he changed his sheets, but he did not know when that was. (D.I. 92-2 at 3).

In his grievance, Plaintiff states that he complained to Defendant C/O Charles about red splotches on his skin, asked to be seen by medical, was refused a mattress,

---

[2] I am not sure what the basis is for the mold denial, since when Lt. Maans met with Plaintiff, the mattress had already been replaced. Lt. Maans does not say he ever saw the mattress in question.

3

and was forced to sleep on the plain "steel" bunk. (D.I. 92-1 at 2). The grievance states that before Plaintiff discovered the mold, he had submitted two sick call slips due to severe itching. (*Id.*). Plaintiff also testified that he had filed sick call slips about itching. (D.I. 92-2 at 5). He testified that the sick call process had nothing to do with the officers and that the officers do not provide him any medical care. (*Id.* at 6).

Plaintiff testified that Charles told him to file a medical grievance or something like that, and basically there was nothing Charles could do about it. (D.I. 92-2 at 4). In Plaintiff's grievance, he states that Defendant C/O McCarthy advised him to submit a grievance. (D.I. 92-1 at 2). Plaintiff testified that somebody told him to file a grievance. (D.I. 92-2 at 21). Plaintiff also showed Sgt. Bowden the mattress, but he did not do anything. (D.I. 92-2 at 4).

Plaintiff testified that the State Defendants "neglected" and they could have given him a new mattress from next door. (D.I. 92-2 at 14). Plaintiff believed the correctional officers were lying when they told him they had no power to do that because they run the tier and can do whatever they want. (*Id.*). According to the unrefuted declaration of Staff Lt. Dean Blades, Plaintiff's grievance involved a "purported laundry/clothing issue (*i.e.*, alleged mold on mattress)." (D.I. 92-4 at 3). Because it was a laundry unit issue, the laundry unit was to address the issue and a large shipment of mattresses was due at any time. (*Id.* at 4). Upon receipt, replacement mattresses were distributed to inmates. (*Id.*).

The grievance investigative report, dated July 2, 2017, states that Plaintiff told investigator Maans that he had received a new mattress and the itching issues were resolved. (*Id.* at 3). However, Plaintiff would not sign off on the grievance because he

4

was "upset that it took so long to get a new mattress." (D.I. 92-1 at 3). Maans states that when he met with Plaintiff on July 2, 2017, Plaintiff had already received a new mattress.[3] (D.I. 92-3 at 3). Plaintiff testified that Maans "did not come to him" on July 2, 2017, but had no evidence to refute it. (D.I. 92-2 at 8). Plaintiff recalled speaking to a captain or a lieutenant, but did not remember his name. (*Id.* at 9).

Plaintiff names Correctional Officer Diaz as a defendant in the caption of the Amended Complaint. (D.I. 14). Plaintiff testified that he is not referenced in the body of the complaint, there are no allegations against him, and he "left him out." (D.I. 92-2 at 18-20).

## II. LEGAL STANDARDS

"Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Drumgo v. Kuschel*, __F. App'x __, 2020 WL 2316047, at *2 (3d Cir. May 11, 2020) (citing Fed. R. Civ. P. 56(a)). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v.*

---

[3] Plaintiff testified that everyone on the tier received new mattresses from the warden. (D.I. 92-2 at 11-13).

5

*Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

There is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III. DISCUSSION

### A. Medical Needs

Connections moves for summary judgment on the grounds that Plaintiff failed to proffer any evidence to show that the ongoing care he received for his skin irritation and possible scabies amounts to deliberate indifference and that Connections maintained a defective policy, practice, or custom that caused the alleged deliberate indifference. (D.I. 94, 102). Plaintiff opposes Connections' motion on the grounds that he was in

constant agony from June 10, 2017 to July 28, 2017, Connections tried to minimize his condition by calling it a rash, Connections did not respond to his sick call requests within 48 hours in violation of Connections' policy, and Connections' personnel provided inadequate and ineffective medical care. (D.I. 98, 103, 106).

Because Plaintiff was a pretrial detainee during the relevant time, his claims are governed by the Fourteenth Amendment. "The Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" and the Court of Appeals for the Third Circuit evaluates medical indifference claims of both pretrial detainees and convicted prisoners under the same standard. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To set forth a cognizable medical needs claim, a pretrial detainee must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *See id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference may lie upon a claim of inadequate medical treatment, and it may also be based upon a claim of delay or complete denial of medical care. *See*

<pre>
Case 1:17-cv-00964-RGA   Document 107   Filed 07/10/20   Page 9 of 13 PageID #: 1506
</pre>


*Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (2017) (citing *United States ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

"A prisoner does npt have the right 'to choose a specific form of medical treatment.'" *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 10, 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). "Mere disagreement as to the proper medical treatment is insufficient" to state a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (cleaned up). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should have been done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107.

A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Id.* at 104-05. However, a delay or denial of medical treatment claim is approached differently than an adequacy of care claim.

> Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry – since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim. Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim. All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors.

*Pearson v. Prison Health Serv.*, 850 F.3d at 537; *see U.S. ex rel. Walker v. Fayette Cty.*, 599 F.2d at 575 n.2.

The record evidence clearly demonstrates that Plaintiff was provided medical care for his skin condition. He was seen at least seven times over a two-month period and during that time different medications and creams were administered in an effort to provide Plaintiff relief. While Plaintiff may not agree with the treatment he initially received, medical personnel continued to treat the skin condition and did so successfully as declared by Plaintiff following his admission to the prison infirmary, "I feel so much better now! I think it is finally over." (D.I. 95 at 38). It simply cannot be said that medical personnel were deliberate indifferent to Plaintiff's medical needs.

In addition, Plaintiff's complaints that Connections violated its own policy because he was not seen within 48 hours of submitting a sick call slip do not rise to the level of a constitutional claim. There was no inordinate delay between Plaintiff's submission of sick call slips and a medical provider visit. Moreover, nothing in the record suggests that any delay was the motivated by non-medical factors.

Connections and its medical personnel did not violate Plaintiff's constitutional rights. No reasonable jury could find for Plaintiff on the medical needs claim he raises. Therefore, the Court will grant Connections' motion for summary judgment.

**B.   Conditions of Confinement**

State Defendants move for summary judgment on the grounds that there are no allegations directed towards Diaz and Plaintiff has failed to establish that Charles, Bowden, and McCarthy violated Plaintiff's constitutional rights. (D.I. 91, 92). Plaintiff opposes the motion and argues that it should be denied for the same reasons an earlier motion to dismiss was denied. (D.I. 104).

9

The Court turns first to Defendant Diaz. There are no allegations in the Amended Complaint against Diaz and there is no record evidence to indicate his personal involvement in any of Plaintiff's claims. As is well established, liability in a § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). Because there is no evidence of Diaz's personal involvement, summary judgment on his behalf is appropriate as a matter of law.

Plaintiff raises a conditions of confinement claim against Charles, Bowden, and McCarthy. Pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners; this principle applies to claims regarding jail conditions. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 1005); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d at 581-82; *Kost v. Kozakiewicz*, 1 F.3d 176, 187-88 (3d Cir. 1993).

The Due Process Clause of the Fourteenth Amendment prohibits conditions of confinement that "amount to punishment." *Bell v. Wolfish*, 441 U.S. at 535; *Robinson v. Danberg*, 673 F. App'x 205, 212 (3d Cir. 2016). To determine whether conditions are punitive, the Court considers: "(1) whether there are any 'legitimate purposes . . . served by [the] conditions' and (2) 'whether [the] conditions are rationally related to [those] purposes. *Robinson*, 673 F. App'x at 212 (quoting *Union Cty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983).

As explained by the Supreme Court, crowding and other living conditions may constitute punishment of detainees if they inflict "genuine privations and hardships over an extended period of time[.]" *Bell*, 441 U.S. at 542. "'There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned.'" *Id.* at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). The Fourteenth Amendment standard of unconstitutional punishment contains an objective component which requires an inquiry into whether the deprivation at issue was "sufficiently serious." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

No reasonable jury could conclude that the single "mold" incident violated Plaintiff's constitutional rights. The record evidence is that Plaintiff discovered what he perceived to be mold on his mattress. He complained about the mattress and his itchy condition to Defendants Charles, Bowden, and McCarthy, two of whom counseled him to submit grievances. Plaintiff did just that. Within one week of the submission of his grievance, Plaintiff, as well as all inmates on his tier, were the recipients of new mattresses. While Plaintiff believed that the State Defendants had the power to give him a new mattress from next door and that they were lying when he was told they could not, the unrefuted evidence is that the mattress issue fell under the purview of the laundry unit.

While no doubt uncomfortable and unpleasant, by Plaintiff's own account the mattress at issue was removed – his grievance states that he was forced to sleep on the plain "steel" bunk, and within a week, if not sooner, he was given a new mattress. The record does not support a finding that Plaintiff was subjected to genuine privations and hardships over an extended period of time. Nor do the circumstances rise to the

11

level of a "punishment" that implicated Plaintiff's substantive due process rights. See, e.g., Hubbard v. Taylor, 538 F.3d 229, 235 (3d Cir. 2008) (holding that triple celling of pretrial detainees and use of floor mattresses did not violate detainee's due process rights because they "were not subjected to genuine privations and hardship over an extended period of time").

Accordingly, the Court will grant State Defendants' motion for summary judgment.

## IV. CONCLUSION

For the above reasons, the Court will grant Defendants' motions for summary judgment.

An appropriate order will be entered.